UNITED STATES DISTRICT COURT

for the

MIDDLE DISTRICT OF NORTH CAROLINA



Case Number: 1:20-CV-00256

| | | |
|---|---|---|
| DERRICK M. ALLEN, | ) | |
| Plaintiff, | ) | AMENDED CIVIL |
| -vs- | ) | COMPLAINT |
| | ) | |
| RENTGROW, INC., Anant Yardi, | ) | |
| Gordon Morrell & Corporation | ) | [✓] Jury Trial |
| Service Company | ) | |
| Defendant. | ) | |

## PARTIES

1) Plaintiff Derrick M. Allen (hereinafter "Mr. Allen") is a natural person, residing at all times relevant to this case in Durham County in the State of North Carolina.

2) Defendant RentGrow, Inc. (hereinafter "RentGrow") is a corporation incorporated in the State of Delaware and doing business in Durham County in the State of North Carolina.

## JURISDICTION

3) The United States District Court has jurisdiction under 28 U.S.C.

§1331 to adjudicate Mr. Allen's claim for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et. seq.*

4) The United States District Court has jurisdiction under 28 U.S.C. §1332 to adjudicate Mr. Allen's claim for libel as established by the law of the State of North Carolina because the amount in controversy in this case exceeds the sum or value of $75,000.

## FALSE REPORTS OF SEX OFFENDER RECORDS AND CONVICTION OF A SEX CRIME

5) On or about 5 June 2019, RentGrow published to Lenox at Patterson Place, a housing provider in the County of Durham, State of North Carolina, and to persons at Lenox at Patterson Place a "Screening Report" (hereinafter "the Report") for review on Mr. Allen's application for an apartment.

6) The Report included:

"National Sex Offender History Does Not Meet Property Requirements";

"National Sex Offender Records Found";

"SEXUAL OFF 1ST DEGR W/CHILD...CONVICTED"; and

"Record Type: SexOff
State of Record: NC".

7) RentGrow's reports of a "National Sex Offender History", of "National

- 2 -

Sex Offender Records Found", of conviction of sexual offense first degree against a child (a Class B1 felony in North Carolina), and of sex offender records in North Carolina were (and are) all false.

8) There is no national sex offender registry. If the Report meant a the "National Sex Offender Public Website" provided by the United States Department of Justice at https://www.nsopw.gov/ through the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, "SMART", a simple online search for "Derrick Allen" on or about 5 June 2019 or at any time relevant to this case would have shown no Derrick Allen in North Carolina or any Derrick Allen matching the other identifying information for Mr. Allen stated in the Report.

9) Likewise, a simple online search for "Derrick Allen" on the North Carolina Sex Offender Registry provided by the North Carolina State Bureau of Investigation at http://sexoffender.ncsbi.gov/ would have shown "No record found" for any Derrick Allen on or about 5 June 2019 or at any time relevant to this case.

10) The Report listing of a conviction of sexual offense first degree

against a child included "Punishment Type: ACTIVE SS", "Minimum Term: 24 YEARS", and "Maximum Term: 29 YEARS 7 MONTHS". The Report listing also included: "Sentence Status: DISMISSED", "Last Movement: COURT ORDER RELEASE", and "Last Movement Date: 2009-04-14" as well as the docket number in Durham County.

11) The Report listing of purported criminal convictions also included: "MURDER SECOND DEGREE...CONVICTED", "Punishment Type: ACTIVE SS", "Minimum Term: 19 YEARS 9 MONTHS", "Maximum Term: 24 YEARS 6 MONTHS", "Sentence Status: DISMISSED", "Last Movement: COURT ORDER RELEASE", and "Last Movement Date: 2009-04-14" as well as the docket number in Durham County.

12) The Report listing of both the conviction of sexual offense first degree against a child and second degree murder included ""Offense Date: 02/09/1998".

13) A check of the North Carolina court system public records, available on public computers at any county courthouse in North Carolina, on or about 5 June 2019 or at any time relevant to this case would have

shown both the sexual offense and second degree murder convictions were vacated in 2009 and thereafter were dismissed completely.

14) The Report included listing of criminal convictions on 19 pages, listing purported convictions of 47 charges – the aforementioned sexual offense and murder charges and 45 misdemeanor charges.

15) The Report listing of misdemeanor charges included multiple listings of the same charges, making 10 misdemeanor charges appear to be 45 misdemeanor charges.

16) Other than the sexual offense conviction which was vacated in 2009 with the charge thereafter dismissed, Mr. Allen never has been convicted of any sex offense of any kind.

17) Mr. Allen has been convicted of a total of six misdemeanor offenses, one in 1997, four in 2012 (including three from the same incident), and one in 2013.

18) The Report listing of 46 purported misdemeanor convictions included purported convictions of assault of a school official in 1995 which in truth was a single charge which had been dismissed, a purported conviction of disturbance at a school in 1995 which in truth had been dismissed, and multiple listings of other charges and convictions to make the six actual misdemeanor convictions and dismissed charges appear to be a total of 46 misdemeanor convictions.

19) On the computers available to the public at any county courthouse in North

- 5 -

Carolina, a search for criminal charges against Mr. Allen in the public court records on 5 June 2019 or on any date relevant to this case would have shown the only convictions of Mr. Allen were six misdemeanor convictions, one in 1997, four in 2012 (including three from the same incident), and one in 2013.

20) Upon information and belief, RentGrow has published the same or similar false and misleading reports of sex offender records and purported criminal convictions to Lenox and other housing providers and to persons at and associated with those housing providers in North Carolina at various times.

21) After Mr. Allen became aware of RentGrow's false reports of sex offender records and purported criminal convictions and notified RentGrow of the falsehoods, on or about 23 July 2019, RentGrow published to Lenox and to persons at and associated with Lenox an amended "screening report" (hereinafter "the Amended Report"), still dated 5 June 2019.

22) The Amended Report deleted "National Sex Offender History Does Not Meet Property Requirements", changed "National Sex Offender Records Found" to "No National Sex Offender Records Found", and deleted the listing of the purported convictions of first degree sexual offense against a child and second degree murder.

23) The Amended Report continued to list purported misdemeanor convictions

- 6 -

including the purported conviction of assault of a school official in 1995 which charge in truth had been dismissed, including the purported conviction of disturbance at a school in 1995 which charge in truth had been dismissed, and including the multiple listings of the same charges and convictions to make the six actual misdemeanor convictions of Mr. Allen appear to be 46 misdemeanor convictions.

24) RentGrow changed "Application Result: Reject Applicant" in the Report to "Application Result: REJECT" in the Amended Report.

25) Upon information and belief, RentGrow's change in the "Application Result" from "Reject Applicant" to "REJECT" was a direction to Lenox to decline Mr. Allen's application for an apartment for the purpose of enabling RentGrow in the event of litigation to claim Mr. Allen had suffered no injury from RentGrow's false reports of sex offender records and of convictions of sexual offense against and murder of a child.

26) Lenox complied with RentGrow's direction, replying to Mr. Allen's request for reconsideration of his apartment application: "RentGrow Inc. advised our team on Tuesday July 23rd that no changes were made to the screening results".

27) On or about 16 August 2019, RentGrow published to Lenox and to persons at and associated with Lenox another amended "screening report" (hereinafter "the Second Amended Report"), still dated 5 June 2019.

- 7 -

28) The Second Amended Report reduced the list of purported misdemeanor convictions from 46 to nine, continuing to make the six actual misdemeanor convictions of Mr. Allen appear worse by listing four times the same twenty-two-year-old conviction of assault of a female in 1997.

29) The Second Amended Report continued RentGrow's direction to Lenox to 'REJECT" Mr. Allen's apartment application.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

30) Mr. Allen realleges paragraphs 1 through 29 above the same as if stated fully here.

31) In preparing and publishing the Report, RentGrow violated 15 U.S.C. §1681e(b) by not following any reasonable procedure to assure accuracy of RentGrow's report of Mr. Allen's purported criminal record despite being well-aware of the injuries Mr. Allen would suffer from false report of being a sex offender who had molested and murdered a child as well from misleading report of what appeared to be 46 misdemeanor convictions when in truth there were only six, the most serious of which occurred twenty-two years ago.

32) The truth of Mr. Allen not being a sex offender was ascertainable from readily-available online government sex offender listings.

33) The truth of Mr. Allen not being a sex offender and not convicted of any sex

offense or murder was ascertainable from readily-available public court records.

34) RentGrow failed completely to require any employee or subcontractor to check those readily-available public sex offender listings and court records.

35) The truth of Mr. Allen not being a sex offender and not convicted of any sex offense or murder appeared on the face of the Report itself showing dismissal and court-ordered release on the only sex offense and murder convictions listed, the dismissal and court-ordered release over a decade before RentGrow published the Report.

36) The truth of Mr. Allen not being convicted of anywhere near 46 misdemeanors was ascertainable from readily-available public court records.

37) The truth of Mr. Allen not being convicted of anywhere near 46 misdemeanors appeared on the face of the Report itself.

38) RentGrow published the Report with malice against Mr. Allen and with willful intent to injure Mr. Allen, the Report itself establishing a high degree of awareness of the falsity of the claims of Mr. Allen being a sex offender convicted of sexual offense against and murder of a child and of the falsity of RentGrow's apparent claim of 46 misdemeanor convictions.

39) Even when deleting the report of Mr. Allen being a sex offender convicted of

sexual offense against and murder of a child, in publishing the Amended Report and Second Amended Report, RentGrow continued to show malice against Mr. Allen and willful intent to injure Mr. Allen by listing the same misdemeanor convictions repeatedly to make the record appear much worse than the true record and by directing the housing provider to "REJECT" Mr. Allen's application for an apartment.

40) RentGrow's violations of the Fair Credit Reporting Act in the Report, in the Amended Report, and in the Second Amended Report were grossly negligent, in reckless disregard for the truth, willful, and malicious with the intent to injure Mr. Allen.

## LIBEL *PER SE*

41) Mr. Allen realleges paragraphs 1 through 29 and 31 through 40 above the same as if stated fully here.

42) In publishing the Report, RentGrow in writing charged Mr. Allen falsely with being a sex offender convicted of the infamous crimes of sexual offense against and murder of a child.

43) The false charges of Mr. Allen being a sex offender convicted of sexual offense against and murder of a child have subjected and continue to subject Mr. Allen to disgrace and degradation and have held and continue to hold Mr.

Allen up to public hatred, contempt and ridicule, causing Mr. Allen to be shunned and avoided.

## DAMAGES

44) Because of RentGrow's grossly negligent and willful violations of the Fair Credit Reporting Act and publishing of libel *per se*, Mr. Allen has been denied suitable housing, has incurred additional expense to obtain temporary housing when able and has been homeless when not, has suffered sleeplessness, anxiety, and other emotional distress, has suffered damage to his reputation, has been subjected to hatred, contempt, and ridicule, and has been shunned and avoided.

## RELIEF REQUESTED

45) For RentGrow's violations of the Fair Credit Reporting Act, Mr. Allen respectfully requests award of actual damages, statutory damages, punitive damages, and the costs of this action together with reasonable attorney's fees.

46) For RentGrow's publishing liber *per se*, Mr. Allen respectfully requests award of actual damages including but not limited to presumed damages and punitive damages.

23 March 2020

_Derrick M. Allen Sr._
Derrick M. Allen Sr.

- 11 -

( Pro' se)